IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JULIAN DEBRUCE**                      Case No. 5:16 CV 894

    Petitioner,

     v.                                       Judge Jeffrey J. Helmick

**JOHN COLEMAN,**                    REPORT AND RECOMMENDATION

    Respondent.                      Magistrate Judge James R. Knepp II

## INTRODUCTION

Julian DeBruce, a *pro se* Ohio prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Respondent, Warden John Coleman, filed a Motion to Dismiss (Doc. 7) and DeBruce filed a response (Doc. 10). In 2010, a jury convicted DeBruce of two counts of rape in violation of Ohio Rev. Code § 2907.02(A)(2) and one count of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(4). DeBruce was subsequently sentenced to an aggregated sentence of twenty-two years of imprisonment which was ordered to be served consecutive to another conviction. This cause is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) for findings of fact, conclusions of law, and recommendations. For the reasons discussed below, the undersigned recommends Respondent's motion be granted.

## FACTS

The Ohio Court of Appeals summarized the facts of the case as follows:

{¶ 2} S.M. and Mr. Debruce were at the home of S.M.'s friend and at some point, went into the bathroom to talk. According to S.M., Mr. Debruce punched S.M. in the face, and she ran out of the home to a house across the street. When the neighbor answered the door, Mr. Debruce threatened him, and so the neighbor did not let S.M.

1

inside.

{¶ 3} According to S.M., Mr. Debruce dragged S.M. by her hoodie back to his sister's apartment, stopping occasionally to force her to perform oral sex. At his sister's apartment, Mr. Debruce forced S.M. to repeatedly perform oral sex and he engaged in vaginal intercourse with her. Throughout the encounter, Mr. Debruce repeatedly threatened to kill or injure S.M.

{¶ 4} Mr. Debruce let S.M. go the next morning, but only after he blindfolded her and walked her away from his sister's apartment. S.M. ran to a neighborhood store and called 911. She eventually led the police to Mr. Debruce, and he was arrested.

{¶ 5} A jury convicted Mr. Debruce of two counts of rape and one count of kidnapping. The trial court sentenced Mr. Debruce to an aggregate term of 22 years. Mr. Debruce has appealed, raising five assignments of error for review.

. . . .

{¶ 9} S.M testified that she was walking from her friends apartment behind the Hi–DeHo bar when she heard Mr. Debruce call out her name. She spoke with Mr. Debruce who told her that he had some alcohol in his car, and the two of them went to the house of S.M.'s friend Todd Stafford. According to S.M., she and Mr. Debruce eventually ended up in Mr. Stafford's bathroom. S.M. testified that Mr. Debruce became angry with her and hit her. She called for Mr. Stafford, but Mr. Stafford made S.M. and Mr. Debruce leave. S.M. went across the street to the house of Omar Muhammad, whom she had met before. She testified that she asked to use Mr. Muhammad's phone, but Mr. Debruce threatened to hurt Mr. Muhammad if he let S.M. in the house and Mr. Muhammad did not let her inside.

{¶ 10} S.M. testified that, after Mr. Muhammad shut the door, she walked down the street, telling Mr. Debruce that he was wrong to have hit her. When she tried to walk away from Mr. Debruce, however, Mr. Debruce grabbed her by the hoodie and began to drag her down street. According to S.M., she attempted to convince him to let her go, but he told her he would throw her in a trunk and drive her out of town. Over the course of the night, Mr. Debruce threatened that he would stab S.M., stick a "branch up [her] *ss[,]" and break her nose.

{¶ 11} S.M. testified Mr. Debruce dragged her past a house with people outside and that she tried to run up the driveway. However, Mr. Debruce grabbed her hoodie again and struck her. After they had walked some more, Mr. Debruce stopped in the middle of a street and forced S.M. to perform oral sex on him. Mr. Debruce dragged S.M. to the towpath near Summit Lake, stopping to urinate onto S.M. and into her mouth. Mr. Debruce told her that she should drink his urine. After Mr. Debruce had relieved himself, he dragged S.M. to an apartment where he forced her to strip and

2

then perform oral sex on him again. He also engaged in vaginal intercourse with her on the couch.

{¶ 12} According to S.M., after the vaginal intercourse, Mr. Debruce began to use a laptop computer. S.M. testified that, at some point after Mr. Debruce began using the computer, she performed oral sex on him again and that, when she said her jaw was tired, Mr. Debruce threatened to break her nose. She testified that she performed oral sex on Mr. Debruce until he did not want it anymore and then they engaged in vaginal intercourse again. S.M. testified that she had been "threatened so much[ ]" that she wanted "to do what [she] had to do to go home."

{¶ 13} Eventually, S.M. fell asleep, but awoke when Mr. Debruce's sister Tiara Taylor came downstairs with her children. According to S.M., she was intimidated because Mr. Debruce was awake and watching her. After Ms. Taylor and her children left, Mr. Debruce offered S.M. some food and then returned her clothes to her. He also gave her a jacket because she was cold. He then blindfolded her and led her out of and away from the apartment building before letting her go. S.M. ran to a store and asked to use the phone because she had been raped and needed to call her mother.

{¶ 14} Valorie Prulhiere, a registered nurse, performed a physical examination of S.M. She testified that S.M.'s lower lip was bruised and scraped and that her upper lip was bruised and swollen. Jennifer Pelc, a forensic biologist at the Bureau of Criminal Identification and Investigation ("BCI"), testified that she examined the clothes S.M. wore the night that Mr. Debruce allegedly raped her. According to Ms. Pelc, S.M.'s hoodie tested presumptively positive for urine.

{¶ 15} Stacy Violi, a forensic scientist at the BCI, examined the vaginal sample from S.M.'s rape kit. According to Ms. Violi, the sample contained the DNA profiles matching those of S.M. and Mr. Debruce. She also testified that she examined a cutting from Mr. Debruce's t-shirt that Ms. Pelc had marked as testing positive for blood. Ms. Violi testified that the t-shirt cutting contained DNA from S.M., Mr. Debruce, and two other individuals. Ms. Violi also examined samples from S.M.'s hoodie and determined that they contained S.M.'s DNA as well as other individuals. However, she could not "make a conclusion regarding [Mr.] Debruce as a contributor to the DNA on the hoodie."

{¶ 16} In summary, S.M. testified that Mr. Debruce dragged her through the streets of Akron and repeatedly threatened to kill or harm her if she did not perform fellatio on him. She testified that she was threatened so much that she just wanted to do whatever she could to get home. Ms. Prulhiere testified that S.M. had bruising and scrapes on her face, and Ms. Violi testified that the semen sample from S.M. matched Mr. Debruce's DNA profile. Therefore, there was sufficient evidence from which the trier of fact could reasonably find that Mr. Debruce by force restrained S.M.'s liberty

3

and that he forced her to engage in sexual conduct against her will by force or threat of force. Accordingly, the State presented sufficient evidence for the jury to find that Mr. Debruce had violated R.C. 2907.02(A)(2) and 2905.01(A)(4).

*State v. DeBruce*, No. 25574, 2012 WL 394138, at *1–3 (Ohio Ct. App. Feb. 8, 2012).

On appeal, DeBruce, through counsel, raised the following assignments of error:

I. The trial court erred by denying Mr. Debruce's Criminal Rule 29 motion for acquittal as the state failed to present sufficient evidence to sustain the convictions.

II. The jury verdict was against the manifest weight of the evidence.

III. The prosecutor's remarks during closing argument were prejudicial and denied Mr. Debruce a fair trial.

IV. The trial court committed reversible and plain error in assessing court costs against Mr. DeBruce without complying with Ohio Rev. Code § 2947.23(A).

V. Mr. DeBruce was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to argue that the trial court's imposition of court costs under Ohio Rev. Code § 2947.23(A) was defective.

*Id.* at *1–7.

On February 8, 2012, the Ohio Court of Appeals overruled DeBruce's first, second, and third assignments of error, and found the fifth alleged error to be moot. The court upheld the fourth assignment of error, remanding the case to the trial court for the sole purpose of correcting the imposition of costs. *Id.* DeBruce did not file an appeal with the Supreme Court of Ohio. On February 17, 2012,[1] the trial court ordered the court costs waived due to DeBruce's indigency. (Doc. 7-1, at 86).

On May 3, 2012, DeBruce, proceeding *pro se*, filed an application to reopen his appeal

---

[1] Because various state court documents have one or more dates, including multiple file stamps, the latest filing date of the document will be used in this report. The slight variations in dates within a document are irrelevant to the ultimate resolution of the case.

4

pursuant to Ohio App. R. 26(B). DeBruce alleged his appellate counsel was ineffective for several reasons. (Doc. 7-1, at 87-93). On May 16, 2012, the Ohio Court of Appeals denied the application to reopen. (Doc. 7-1, at 96-98). DeBruce did not file an appeal with the Supreme Court of Ohio.

On August 1, 2014, DeBruce filed a motion with the trial court to correct his sentence alleging his sentence was void because his two counts of rape were not merged as allied offenses. (Doc. 7-1, at 99-106). The trial court denied the motion as untimely on August 14, 2014. (Doc. 7-1, at 110).

On October 16, 2014, DeBruce filed a notice of appeal and a motion for leave to file a delayed appeal from the trial court's decision of August 14, 2014. (Doc. 7-1, at 111-16). On October 29, 2014, the Ohio Court of Appeals denied the motion for a delayed appeal as being inapplicable to post-conviction proceedings under Ohio App. R. 5(A). (Doc. 7-1, at 117). DeBruce did not file an appeal with the Supreme Court of Ohio.

On February 20, 2015, DeBruce filed a notice of appeal and a motion for leave to file a delayed appeal with the Supreme Court of Ohio from the Ohio Court of Appeals's February 8, 2012 decision affirming his conviction. (Doc. 7-1, at 118-39). On April 8, 2015, the Supreme Court of Ohio denied the motion for a delayed appeal and dismissed the case. (Doc. 7-1, at 140).

DeBruce then filed his federal habeas corpus petition with this Court on April 6, 2016. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); (Doc. 1, at 15). In his petition, DeBruce raises the following grounds for relief:

> **GROUND ONE:** The Petitioner Fifth and Fourteenth Amendment right to a fair trial was denied due to the trial court convicting him based on insufficient evidence. This was contrary to clearly establish law and based on a unreasonable determination of the facts. [sic]
>
> **GROUND TWO:** The Jury verdict convicting Mr. DeBruce was against the

manifest weight of the evidence and deprived Mr. DeBruce of his Fifth and Fourteenth Amendment right to due process of law.

**GROUND THREE:** The Prosecutor remarks during closing argument were preJudicial denying Mr. DeBruce of a fair Trial as guaranteed by the Fifth and Fourteenth Amendment of the Constitution. [sic]

(Doc. 1, at 5-8).

Respondent moved to dismiss DeBruce's petition (Doc. 7), and DeBruce responded (Doc. 10).

### STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court cannot grant a habeas corpus petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). Under the contrary to clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the unreasonable application clause, a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the petitioner's case. *Id.* at 413. To obtain habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103

6

(2011).

To analyze whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, courts look only to the holdings of the Supreme Court's decisions as of the time of the relevant state court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). The state court's factual findings are presumed correct unless rebutted by the habeas corpus petitioner by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *McAdoo v. Elo*, 365 F.3d 487, 493–94 (6th Cir. 2004).

## DISCUSSION

The AEDPA provides a one-year statute of limitations for a writ of habeas corpus by a person in custody pursuant to a judgment of a state court. 28 U.S.C. § 2244(d)(1). Although the statute of limitations is "not jurisdictional," when it has been timely asserted by the warden, as it has been in this case, it "effectively bars relief absent a showing that the petition's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009).

Under 28 U.S.C. § 2244(d)(1), the statute of limitations begins to run from the latest of these four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented

could have been discovered through the exercise of due diligence.

A case becomes final on direct review for the purposes of § 2244(d)(1)(A) when the United States Supreme Court denies a petition for a writ of certiorari, or the time to file a petition for a writ of certiorari has expired. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007).

DeBruce's conviction became final upon the expiration of the time for him to seek a direct review of his conviction. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 148–50 (2012); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459–60 (6th Cir. 2012); *Williams v. Wilson*, 149 F. App'x 342, 345 (6th Cir. 2005) (one-year period begins to run on expiration of the forty-five day period under which review could have been sought before the Supreme Court of Ohio).

The decision of the Ohio Court of Appeals affirming DeBruce's conviction was filed on February 8, 2012. *DeBruce*, 2012 WL 394138. The case was remanded to the trial court so the trial court could void the imposition of costs. *Id.* at *7. The error was corrected in a decision entered on February 17, 2012. (Doc. 7-1, at 86). DeBruce failed to seek a timely review before the Supreme Court of Ohio. Giving DeBruce the benefit of the doubt, the time for him to file his request with the Supreme Court of Ohio began to run on February 18, 2012, the day after the trial court entered its decision correcting the judgment. DeBruce's conviction became final on April 2, 2012, when the forty-five day time period in which to seek a direct review with the Supreme Court of Ohio expired. *See* Ohio Sup. Ct. R. II § 2(A)(1)(a) (now S. Ct. Prac. R. 7.01(A)(1)(a)(i) effective January 1, 2013). As a result, the AEDPA's statute of limitations began to run on April 3, 2012.

The statute of limitations may be tolled when a "properly filed" application for state post-conviction relief, or other collateral relief, is filed. *Artuz v. Bennett*, 531 U.S. 4, 8–9 (2000). DeBruce filed a Rule 26(B) motion to reopen his case on May 3, 2012. (Doc. 7-1, 87). Thus, the statute of

8

limitations ran for thirty days, from April 3, 2012, until May 2, 2012, when it was tolled by the Rule 26(B) motion. The motion was dismissed on May 16, 2012, and DeBruce failed to seek review of the denial with the Supreme Court of Ohio. DeBruce is not entitled to further tolling of the statute of limitations beyond the May 16, 2012 dismissal. *See Evans v. Chavis*, 546 U.S. 189, 197–98 (2006); *Scarber v. Palmer*, 808 F.3d 1093, 1096 (6th Cir. 2015), *cert. denied*, 137 S. Ct. 37 (2016). Thus, the statute of limitations began to run again on May 17, 2012, with 335 days remaining. The statute of limitations ran uninterrupted, expiring on April 17, 2013.

Although DeBruce filed a motion to correct his alleged illegal sentence in August 2014 and a motion for leave to file a delayed appeal in February 2015, neither motion can toll the statute of limitations as the statute had already expired. Once the statute of limitations has expired, state collateral review proceedings can no longer revive the limitations period. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Because DeBruce's habeas corpus petition was not filed with this Court until April 6, 2016, his petition was filed nearly three years too late. Therefore, DeBruce's habeas corpus petition is barred by § 2244(d)(1).

Further, DeBruce has not attempted to show, nor is it evident from the record, that he is entitled to equitable tolling which would have stopped the running of the statute of limitations. "Because AEDPA's one-year statute of limitations is not jurisdictional, a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). "Federal courts have typically extended equitable relief only sparingly." *Griffin v. Rogers*, 399 F.3d 626, 635 (6th Cir. 2005) (internal quotation marks and citation omitted). When deciding whether equitable tolling should apply, courts evaluate the following factors:

9

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Id*. "These five factors are not comprehensive, nor is each of the five factors relevant in all cases." *Id*. (internal quotation marks and citation omitted). "Instead, courts must consider equitable tolling on a case-by-case basis." *Id*. (internal quotation marks and citation omitted).

DeBruce has the burden of establishing his entitlement to equitable tolling. *See Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003). In order to meet this burden, DeBruce has to show that extraordinary circumstances prevented the filing of his petition, and that he was diligent in pursuing his case. *Holland v. Florida*, 560 U.S. 631, 649 (2010). DeBruce has not met this burden. DeBruce filed numerous motions with the state courts of Ohio. This conduct shows DeBruce is very capable of litigating his case. Further, DeBruce has not shown that extraordinary circumstances prevented him from filing a timely habeas corpus petition with this Court. Therefore, DeBruce is not entitled to equitable tolling.

DeBruce has also failed to show that he is actually innocent of the charges. *Akrawi*, 572 F.3d at 260. The factual summation of the Ohio Court of Appeals describes how DeBruce restrained the victim's liberty and forced her to engage in sexual conduct against her will by force or the threat of force. *DeBruce*, 2012 WL 394138, at *1–3. This opinion establishes that DeBruce is not innocent of the charges against him. Under *Akrawi*, the untimeliness of DeBruce's petition is not excused on the basis of actual innocence. *Akrawi*, 572 F.3d at 260. Accordingly, DeBruce is not entitled to habeas corpus relief.

### CONCLUSION AND RECOMMENDATION

Accordingly, the undersigned recommends that Respondent's motion to dismiss the petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be granted.

    s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time *WAIVES* the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).